771 So.2d 656 (2000)
Antoinette M. FRANCOIS, Individually and on Behalf of her minor children, Jamie Prescott and Lexie Prescott and Georgiana Pierre
v.
Tequilla D. ALEXANDER, Martin Gail, Safeway Insurance Company and Midland Risk Insurance Company.
No. 99-1760.
Court of Appeal of Louisiana, Third Circuit.
April 5, 2000.
*657 Stephen Santillo, Lafayette, Louisiana, Paul D. Oberle, Jr., Richie & Richie, Shreveport, Louisiana, Counsel for Plaintiffs/Appellees.
Keith M. Borne, Borne, Wilkes & Brady, L.L.P., Lafayette, Louisiana, Counsel for Defendants/Appellants.
Court composed of Judge HENRY L. YELVERTON, Judge BILLIE COLOMBARO WOODARD, and Judge GLENN B. GREMILLION.
WOODARD, Judge.
This litigation stems from an automobile accident between a 1988 Buick Century, operated by Ms. Tequilla Alexander, owned by her mother, Ms. Gail Martin, and insured by Safeway Insurance Company (Safeway), and a 1993 Mercury Sable owned and operated by Ms. Antoinette Francois, occupied by her children, Jaimie, Anthony, and Lexie Prescott, and her mother-in-law, Ms. Georgiana Pierre, and having Uninsured/Underinsured Motorist (UM) coverage with Midland Risk Insurance Company (Midland).
First, we must decide whether the trial court erred when it denied Safeway's motion to dismiss. The Louisiana so called "omnibus coverage," provides coverage to named insureds and those operating the vehicle with the named insured's permission. Specifically, we are asked whether Ms. Francois and Midland introduced sufficient evidence to prove that Ms. Alexander operated the Martin vehicle with her mother's permission. Finding that they did, we affirm the trial court's decision on this issue.
Next, we must determine whether the trial court erred when it denied Safeway's defense to coverage on the grounds of misrepresentation. An insurer may deny coverage for misrepresentation upon proving, by a preponderance of the evidence, that the insured committed a material false statement with the intent to deceive the insurer. Accordingly, we are asked to determine whether the trial court committed a manifest error when it found that Ms. Martin's omission of her then minor daughter as a member of her household from the Safeway's insurance form did not constitute a material misrepresentation with intent to deceive Safeway. Again, finding no manifest error, we affirm the trial court's decision on this issue.
*658 Finally, Plaintiffs ask us to determine whether the trial court abused its discretion in its general damages awards of $4,000.00 to Ms. Francois and $2,000.00 to Ms. Pierre, or whether it manifestly erred when denying Ms. Francois' children's entitlement to damages. Finding that it did abuse its discretion in awarding Ms. Pierre $2,000.00 in general damages, we amend that award to $4,000.00. Nevertheless, we find no abuse of discretion regarding Ms. Francois' award or manifest error regarding the trial court's denial of damages to Ms. Francois' children. Thus, we affirm in part and amend in part.
On April 11, 1996, when in the Town of Broussard, Louisiana, Ms. Alexander, operated a 1988 Buick Century (the Martin Vehicle) owned by her mother, Ms. Martin. As she attempted to turn left on Main Street, she lost control of the vehicle and collided with Ms. Francois' 1993 Mercury Sable (the Francois vehicle) owned and operated by Ms. Francois. Jaimie, Anthony, and Lexie, as well as Ms. Pierre, occupied the vehicle at the time of the accident.
The impact scared the children so badly they were screaming and crying. Anthony, who had previously received a head injury, vomited and became hysterical. Instead of focusing on their own physical well-being, Ms. Francois and Ms. Pierre attended to the children, especially Anthony. Because of his fear of ambulances, they declined the offer to be transported to a nearby hospital. And ultimately, the children did not require medical attention. Nevertheless, shortly after the accident, both Ms. Pierre and Ms. Francois sought medical care at the Lafayette General Medical Center's Emergency Room; Ms. Francois for neck and back pain, and Ms. Pierre for neck and shoulder pain. Thereafter, they both visited Dr. Richard Saloom, a general practitioner.
Upon examining Ms. Francois, Dr. Saloom found the presence of tenderness and tightness (muscle spasms) in her neck, as well as her left scapular area, just below the left shoulder blade. He treated her with ultrasound, non-steroidal anti-inflammatory medicine, and pain killers. He related her physical condition to the shock she sustained in the accident at issue. Similarly, he noted the presence of tenderness and tightness in Ms. Pierre's left scapular and neck area, which required similar treatment as Ms. Francois'. He also related this part of Ms. Pierre's physical condition to the accident at issue, but explained that she also suffered an unrelated chronic arthritic condition, causing additional pain and medical symptoms.
On April 11, 1997, Ms. Pierre and Ms. Francois, individually, and on her minor children's behalf (the Plaintiffs), filed suit. They named as defendants Ms. Alexander, Ms. Martin, Safeway, Ms. Martin's automobile liability insurance carrier, and Midland. Midland filed cross-claims against Ms. Alexander and Safeway, which the trial court eventually consolidated with the main suit.
Before trial, the parties stipulated that Ms. Alexander, solely, caused the accident, thus removing the issue of liability from trial. The trial court dismissed Ms. Martin and Ms. Alexander from the litigation. Asserting that Ms. Martin committed material misrepresentation in failing to disclose that Ms. Alexander resided in her household at the time she purchased insurance, Safeway denied coverage.
A bench-trial occurred on February 23, 1999. At the close of Ms. Francois' case, Safeway filed a motion to dismiss, alleging that Ms. Francois and Midland had failed to set forth any proof that Safeway's coverage applied to Ms. Alexander. The trial court took Safeway's motion under advisement, but in a judgment issued on July 15, 1999, it found Safeway's coverage to be applicable and awarded Ms. Francois $7,472.19, Ms. Pierre $3,095.00, and Midland $2,935.45. However, it did not find Jamie, Lexie, and Anthony Prescott to be entitled to any damages. Safeway appeals suspensively. Ms. Francois answers the appeal.

*659 PROOF OF OMNIBUS COVERAGE
Regarding an automobile liability insurance policy, the Louisiana so called "omnibus coverage," provides coverage to the named insured "and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured."[1] (Emphasis added.) The main issue we must decide is whether Ms. Francois and Midland proved, by a preponderance of the evidence, that Ms. Alexander had her mother's express or implied permission.[2]
Implied permission is determined from the named insured's conduct, such as the acquiescence in, or lack of objection to, the use of the vehicle.[3] This requires reviewing all facts and circumstances.[4] Apparently, the mere existence of a close relationship between the insured and the driver is not conclusive evidence of an implied permission.[5] However, the stipulation of an issue is conclusive proof, as a stipulation effects a judicial admission or confession binding upon all parties and the court.[6] Although, generally, stipulations must be memorialized in writing, our law gives effect to the parties' oral stipulation made in open court and entered into the record on appeal.[7]
Initially, we note that the record establishes that Ms. Alexander lived with her mother at the time of the accident and that there is no evidence or allegation that Ms. Martin ever complained that her daughter drove her vehicle without her permission. However, we need not determine whether these facts, alone, may be sufficient to show Ms. Martin's implied permission, because we find that the parties stipulated regarding "permission."
In Batiste v. Antonio,[8] the court granted a motion for directed verdict in favor of an insurance company on the ground that the plaintiff had not met its burden of proving either implied or express consent to trigger coverage. The plaintiff appealed, arguing that it misunderstood the stipulations entered into by the parties as having been to resolve all issues of coverage. The stipulation merely provided that the insurance company had issued a $1,000,000.00 policy to a certain company. Our brethren of the fourth circuit affirmed the trial court's decision. The court appeared impressed by the fact that the plaintiff had failed to subpoena either the vehicle's owner or driver, and the record did not reflect that the plaintiff attempted service upon either of them.
In the case sub judice, the main remaining coverage issue, which Safeway was interested in litigating, regarding coverage, concerned Ms. Martin's alleged misrepresentation, i.e., Ms. Martin's omission of her daughter's residency, when she initially bought the policy in 1994. This conclusion is also supported at trial and by Safeway's counsel's representation at Ms. Paige Burn's February 17, 1999 deposition. (She appeared as a Safeway representative.)
At the deposition, when the Plaintiffs' counsel attempted to ask her a question regarding Ms. Martin's coverage, Safeway's counsel stipulated regarding some issues pertinent to coverage, and he declared that "[t]he only issue [was] material *660 misrepresentation in connection with the policy." (Emphasis added.)
In the case sub judice, Ms. Alexander was the only person who could testify as to permission to drive her mother's car, since her mother was now deceased. Thus, although no longer a party to the litigation, she made herself available at trial, since the Plaintiffs possibly would need her to testify, inter alia, as to whether she had permission to drive her mother's vehicle or whether she had coverage of her own. Yet, again, Safeway indicated to the Plaintiffs and to the court that it, apparently, had no problem with the "permission" issue-only with the alleged misrepresentation issue. Specifically at trial, before Midland or the Plaintiffs could call Ms. Alexander to the witness stand, Safeway initiated the following stipulation:
And before we go off the record, your Honor, Tequilla Alexander is here. I don't know who subpoenaed her, but I believe that Mr. Oberle[,] [Midland's counsel,] and Mr. Santillo[,] [Ms. Francois' counsel,] do not need her to stay here. I don't need her to stay here as long as we can agree, and Mr. Oberle has already agreed, that if she were called to testify, her testimony would be, among other things, that at the time that the application for the policy was made by her mother, Gayle Martin, she was residing with her mother.
(Emphasis added.) Offered in this context, and especially in conjunction with Safeway's previous representation at Ms. Burn's deposition, we find that it was reasonable for the Plaintiffs' counsel to rely on Safeway's statement to mean that it offered to Midland and the Plaintiffs a stipulation to, "among other things," facts on which they both had an interest in having Ms. Alexander testify in order to prove the elements of their cases. In other words, the Plaintiffs needed her to testify whether she had permission to drive her mother's vehicle, and if not, whether she had coverage of her own, to determine whether its Midland UM coverage applied. Midland needed her to testify that she had received her mother's permission to drive her vehicle. Safeway needed her to testify that she lived with her mother at the time Ms. Martin incurred coverage in order to prove all of the elements of misrepresentation, the only defense to coverage it had raised, which it decided to handle through an express stipulation.
Therefore, under the circumstances and given Safeway's representations that the only issue necessary to litigate was Ms. Martin's alleged misrepresentation, when Midland and the Plaintiffs accepted Safeway's offer to stipulate, the issues of residence and permission became conclusively established. Thus, it would be patently unfair to permit Safeway, now, to prevail on a motion to dismiss because the Plaintiffs had not introduced any evidence to show that Ms. Alexander had operated her mother's vehicle with her mother's permission, when Safeway's counsel had led the Plaintiffs to believe that proving such was unnecessary. Accordingly, we affirm the trial court's decision on this issue.

MISREPRESENTATION
We are asked to determine whether the trial court committed a manifest error when it found that Ms. Martin had not made a material misrepresentation with the intent to deceive Safeway when she omitted her, then, minor daughter as a member of her household on Safeway's insurance form. Finding no manifest error, we affirm.
An insurer may deny an insured coverage based on misrepresentation, upon proving, by a preponderance of the evidence, that (1) the insured made a false statement on its application for insurance; (2) the false statement was material; and (3) it was made with the intent to deceive.[9]
*661 The alleged false statement is contained in the fifth part of Safeway's questionnaire regarding Ms. Martin's 1994 application for insurance. The questionnaire required two answers from her.
The first questioned forewarned her of the following:
APPLICANT WARRANTS THERE ARE NO OTHER DRIVERS IN THE HOUSEHOLD, OTHER THAN THOSE LISTED BELOW.
Any driver whose driver's license is under suspension or has no license, must be excluded by endorsement.
Then, it asked the applicant to list the household's "Principal Driver and All Others." Ms. Martin listed only herself.
Under its application's terms, to satisfy its burden of proving that Ms. Martin made a false statement, Safeway had to show that Ms. Alexander was a member of Ms. Martin's household, that she possessed a driver's license, whether active or revoked, or that she was an unlicensed driver.
The parties stipulated to the "household member" issue in open court. Nevertheless, the record is silent regarding Ms. Alexander's age, whether at the time that her mother incurred the coverage or at the time of the accident. Moreover, Safeway did not show that Ms. Alexander was a "licensed driver" or an "unlicensed driver" at the time that Ms. Martin incurred coverage. All that we know is that Ms. Alexander was of full age and majority and a driver, at the time of the accident. Accordingly, from the record on appeal, we find that Safeway failed to prove that Ms. Martin made a false statement when she listed herself as the only driver in her household.
The second question asked: "Are any other members of the household under age 25?" Ms. Martin checked the square providing "No." Regarding this part of Ms. Martin's answer, Safeway did not produce any evidence showing that Ms. Alexander was under twenty-five years of age at the time her mother filed this form. Accordingly, we cannot say that Ms. Martin made a false statement when providing it.
Thus, finding that Safeway did not meet its burden of proving the threshold fact that Ms. Martin committed a false statement when she filed her 1994 insurance application, we need not go further in order to affirm the trial court's decision.

GENERAL DAMAGES
The Plaintiffs appeal the trial court's award of general damages, alleging that it was unreasonably low. General damages are those which cannot be fixed with pecuniary exactitude as they involve mental or physical pain and suffering, inconvenience, loss of intellectual gratification, or other losses of life or lifestyle, which cannot be easily pecuniarily defined.[10] When reviewing general damages awards, the trial court or jury decision is accorded much deference. The appellate court should not determine what it considers to be an appropriate award, but rather, it should review whether the trial court's award rises to the level of an abuse of discretion.[11]
In the case sub judice, the trial court awarded Ms. Francois $4,000.00 and Ms. Pierre $2,000.00 in general damages. After a thorough review of the medical evidence and diagnosis in the record, we do not find that it abused its discretion regarding Ms. Francois' award. Nevertheless, without considering the additional ailments caused by her degenerative condition, Dr. Saloom's description of Ms. Pierre's injuries as caused by the accident, is strikingly similar to Ms. Francois' condition. Indeed, we do not find any relevant justification for the $2,000.00 difference between *662 Ms. Pierre's and Ms. Francois' awards in general damages. Therefore, we find that the trial court abused its discretion in awarding Ms. Pierre only $2,000.00 and re-fix it to $4,000.00, which is more in keeping with the evidence.

CHILDREN'S DAMAGES
Ms. Francois argues that the trial court erred when it refused to award her children damages. It found that the Plaintiffs did not set forth sufficient evidence to show that they actually sustained any type of injury. It is well settled that in a personal injury action, a plaintiff has the burden of proving by a preponderance of the evidence that: (1) she sustained injuries and (2) the accident at issue caused them.[12] Since the existence of an injury and causation are factual determinations, we review the trial court's decision on appeal under the manifest error standard.[13]
In the case sub judice, it is undisputed that none of Ms. Francois' children sought medical attention as a result of the accident. At most, the accident scared them at the time of its occurrence. In fact, the record is silent of any medical, psychologic, or psychiatric evidence showing that any of the children sustained some type of injury which may have been caused by the accident. Thus, we find no manifest error in the trial court's decision refusing to award the children damages. Accordingly, we affirm.

CONCLUSION
Finding that the trial transcript reflects the parties' stipulation on the issue of Ms. Alexander's permissive operation of her mother's vehicle, we affirm the trial court's denial of Safeway's motion to dismiss. Similarly, we do not find any evidence in the record suggesting that Ms. Martin made a false statement when filing her Safeway insurance form. Accordingly, we affirm the trial court's decision regarding Safeway's misrepresentation defense to coverage. We find no abuse of discretion in the trial court's $4,000.00 award of general damages to Ms. Francois, but do find such an abuse in its $2,000.00 award to Ms. Pierre. Thus, we re-fix her general damages award to $4,000.00. Finally, we find no manifest error in the trial court's decision, denying damages to Ms. Francois' children. We cast Safeway with the costs of this appeal.
AFFIRMED IN PART AND AMENDED IN PART.
NOTES
[1] La.R.S. 32:900.
[2] Manzella v. Doe, 94-2854 (La.12/8/95); 664 So.2d 398; Wolfe v. Employers Com. Union Ins. Co., 272 So.2d 714 (La.App. 3 Cir.1973).
[3] Manzella, 664 So.2d 398.
[4] Wolfe, 272 So.2d 714.
[5] See id.; See Guidry v. Rhodes, 238 So.2d 248 (La.App. 3 Cir.1970).
[6] R.J. D'Hemecourt Petroleum, Inc. v. McNamara, 444 So.2d 600 (La.1983), cert. denied, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 39 (1984).
[7] See Melanson v. Melanson, 94-884 (La.App. 5 Cir. 3/1/95); 652 So.2d 114.
[8] 97-1090 (La.App. 4 Cir. 1/21/98); 706 So.2d 615.
[9] Toups v. Equitable Life Assurance, 94-1232 (La.App. 3 Cir. 5/3/95); 657 So.2d 142, writ denied, 95-2101 (La.12/8/95); 664 So.2d 421.
[10] Bowie v. International Indent. Co., 98-1630 (La.App. 3 Cir. 3/3/99); 734 So.2d 747.
[11] Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
[12] Martin v. Provencher, 97-1648 (La.App. 3 Cir. 5/6/98); 718 So.2d 975, writ denied, 98-1414 (La.7/2/98); 724 So.2d 739.
[13] Id.